1

2

3

4

5

6

7               IN THE UNITED STATES DISTRICT COURT

8            FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   ROXANNE BASILIO,                           No. CIV S-09-3527 MCE EFB PS

11              Plaintiff,

12      vs.

13   TDR SERVICING, LLC, a limited liability
     corporation; INDYMAC, a corporation;
14   MORTGAGE ELECTRONIC
     REGISTRATION SYSTEMS INC., a
15   corporation; and DOES 1 through 100,
     inclusive,                                 ORDER AND
16                                              FINDINGS AND RECOMMENDATIONS
                Defendants.
17   _____/

18          This case, in which plaintiff is proceeding *pro se*, is before the undersigned pursuant to

19   Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  On December

20   23, 2009, plaintiff filed a complaint and amended complaint against defendants TDR Servicing

21   LLC ("TDR"); IndyMac; and Mortgage Electronic Registration System Inc., alleging violations

22   of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; the Real Estate Settlement

23   Procedures Act, 12 U.S.C. § 2601 et seq.; the Home Ownership and Equity Protective Act of

24   1994 ("HOEPA"); and various state law claims for relief (including breach of fiduciary duty,

25   fraud, constructive fraud, breach of the covenant of good faith and fair dealing, unlawful and

26   unfair acts, slander of title, and declaratory relief) regarding the 2006 purchase of plaintiff's

1

home in Elk Grove.  Dckt. Nos. 1, 3.  Plaintiff also filed an application to proceed in this action *in forma pauperis*, Dckt. No. 2; a motion for a temporary restraining order ("TRO"), Dckt. No. 4; and a declaration and proposed order in support of her TRO motion, Dckt. No. 5.  It appears from the docket that none of the defendants were served with any of plaintiff's filings.  On December 24, 2009, the undersigned held a hearing to address plaintiff's application to proceed *in forma pauperis* and her motion for a TRO.  Plaintiff appeared in *pro se*, along with her aunt; nobody appeared on behalf of defendants.  Dckt. Nos. 6, 7.

APPLICATION FOR IN FORMA PAUPERIS STATUS

Plaintiff' application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, Dckt. No. 2, states that she is unable to pay the costs of these proceedings.  Pursuant to federal statute, a filing fee of $350.00 is required to commence a civil action in federal district court.  28 U.S.C. § 1914(a).  The court may nonetheless authorize commencement of an action "without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor."  28 U.S.C. § 1915(a)(1).  An *in forma pauperis* applicant need not be absolutely destitute to qualify for the waiver, but must demonstrate that because of her poverty, she cannot meet court costs and still provide herself and her dependents with the necessities of life.  *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).  The determination whether a plaintiff is indigent, and thus unable to pay the filing fee, falls within the district court's reasonable discretion.  *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).  "[P]ermission to proceed in forma pauperis is itself a matter of privilege and not right; denial of in forma pauperis status does not violate the applicant's right to due process."  *Franklin v. Murphy*, 745 F.2d 1221, 1231 (9th Cir. 1984) (citation omitted).

Plaintiff's application for *in forma pauperis* status states that she currently earns $4,212.00 biweekly from her job at UC Davis Medical Center.  It also states that she has $400.00 in a checking/savings account, and that she has a 403(b) retirement plan in the amount of $18,459.00.  It appears from this information that plaintiff is able to meet her court costs and still

1   provide herself and her dependents with the necessities of life.  Therefore, plaintiff was informed

2   at the December 24, 2009 hearing that the undersigned was inclined to recommend denial of the

3   *in forma pauperis* application.  Immediately after the hearing on December 24, 2009, plaintiff

4   paid the filing fee.  Therefore, plaintiff's *in forma pauperis* application is denied as moot.

5   TEMPORARY RESTRAINING ORDER

6         Plaintiff seeks a TRO preventing TDR from evicting her from her home, and seeks to

7   "preserve the status quo until there is an opportunity to hold a hearing on [an] application for a

8   preliminary injunction."  Dckt. No. 4 at 1, 3.  The house was foreclosed upon and ultimately sold

9   to TDR in a foreclosure sale in July 2009.  Plaintiff notes that TDR obtained a writ of possession

10   for the property on November 12, 2009, and she "is informed and believes that Defendant TDR

11   will enforce the writ of possession at any time now."  *Id.* at 3.  Except for a conclusory statement

12   in a "TRO checklist" attached to plaintiff's TRO motion that the pending eviction date is

13   December 28, 2009, plaintiff's motion and related filings do not provide any evidence regarding

14   when the eviction is set to occur or the imminency of plaintiff's situation.  Dckt. No. 4-2 at 2.

15   However, in light of plaintiff's statement in her TRO checklist that a bankruptcy proceeding was

16   pending, the court examined the court records for the United States Bankruptcy Court for the

17   Eastern District of California and discovered that plaintiff filed for Chapter 13 bankruptcy in that

18   court on November 13, 2009.  *See* Case No. 2:09-bk-44943 (Bankr. E.D. Cal.).  Although this

19   bankruptcy filing effected an automatic stay of TDR's writ of possession for the property, the

20   docket in plaintiff's bankruptcy action reveals that on December 1, 2009, TDR filed a motion for

21   relief from that automatic stay for the specific purpose of being able to enforce the writ of

22   possession and unlawful detainer judgment entered by the Sacramento County Superior Court on

23   November 12, 2009, prior to the filing of plaintiff's bankruptcy proceeding.  The docket also

24   reveals that on December 15, 2009, United States Bankruptcy Judge Holman held a hearing on

25   TDR's motion, and on December 17, 2009, issued a minute order modifying the automatic

26   bankruptcy stay "as against the estate and the debtor . . . in order to permit movant to obtain

3

1  possession of the real property . . . in accordance with applicable non-bankruptcy law." Judge

2  Holman further stated that "[t]he 10-day period specified in Fed. R. Bankr. P. 4001(a)(3) is not

3  waived." Federal Rule of Bankruptcy Procedure 4001(a)(3) provides that "[a]n order granting a

4  motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until

5  the expiration of 14 days after the entry of the order, unless the court orders otherwise."

6  Therefore, based on Rule 4001(a)(3) and the December 17 order, TDR will be authorized to

7  obtain possession of the real property as of December 31, 2009.[1]

8      Notwithstanding the imminency of TDR's intended action, plaintiff fails to meet the

9  requirements for a TRO. "The standards for granting a temporary restraining order and a

10  preliminary injunction are identical." *Haw. County Green Party v. Clinton*, 980 F. Supp. 1160,

11  1164 (D. Haw. 1997); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.

12  7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially

13  identical" to an analysis of a temporary restraining order). The Ninth Circuit recently modified

14  its standard for preliminary injunctive relief to conform to the Supreme Court's admonition in

15  *Winter v. Natural Resources Defense Council, Inc.*, --- U.S. ----, 129 S. Ct. 365, 375-76 (2008),

16  that the moving party must demonstrate that, absent an injunction, irreparable injury is not only

17  possible, but likely. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). Under the

18  new standard, "preliminary injunctive relief requires a party to demonstrate 'that [s]he is likely to

19  succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary

20  relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public

21  interest.'" *Id.* (quoting *Winter*, 129 S.Ct. at 375-76).

22      Plaintiff argues that a TRO is necessary and appropriate because her "complaint states

23  more than adequate facts to show [she] is highly likely to prevail on the merits of her claims; the

24

25      [1] Although Judge Holman stated in his December 17 order that a stay under Rule
   4001(a)(3) is only 10 days, that Rule was amended as of December 1, 2009. A stay under Rule
26  4001(a)(3) is now 14 days.

1    harm that she will suffer is grave (the loss of her family's home); and the harm to TDR is

2    minimal since she only seeks to halt eviction "while defendants provide themselves enough time

3    to review plaintiff's account with the purported seller of the property to verify that the sale to

4    defendant TDR was valid." *Id*. Plaintiff alleges that she is entitled to rescind the loan agreement

5    she entered with IndyMac in 2006 based on various inaccuracies and omissions in the loan

6    documents, which resulted in TILA violations, such as the omission of good faith estimates,

7    notices of right to rescind, and a grossly misstated monthly income representation. *Id*. at 4.

8    Plaintiff contends that because these documents were missing from her loan documentation, she

9    has three years from the date of closing of the loan to exercise the right to rescind the loan. *Id*. at

10   3-4. According to plaintiff, because she has a right to rescind the IndyMac loan, the Trustee's

11   Sale of her property to TDR on July 22, 2009 was unlawful and TDR has no legal right to

12   proceed with an eviction of plaintiff from her property. *Id*. at 5.

13         As a threshold matter, plaintiff has failed to give notice of her motion to the parties she

14   seeks to restrain. On a "TRO checklist" attached to plaintiff's TRO motion, plaintiff states that

15   she gave notice to defendants via a Chapter 13 bankruptcy to "try to preserve the house." Dckt.

16   No. 4-2 at 1. However, it appears from the docket that plaintiff has not served defendants with

17   her complaint or a copy of the TRO motion. On December 23, 2009, after receiving plaintiff's

18   filings and scheduling a hearing on the matter, the court instructed plaintiff to inform defendants

19   regarding the hearing. The court also attempted to contact TDR by leaving a voicemail message

20   with Robert McLeod, whose phone number plaintiff provided and who plaintiff indicated was

21   connected to TDR. The December 23, 2009 voicemail message informed Mr. McLeod about the

22   hearing and provided Mr. McLeod with the telephone number for the undersigned's courtroom

23   deputy. On the morning of December 24, 2009, Mr. McLeod called the courtroom deputy and

24   indicated that although his contact information was provided to plaintiff on the Notice to Quit

25   Subsequent to Foreclosure Sale, he is not an employee of TDR. As noted above, nobody

26   appeared at the December 24, 2009 hearing on TDR's behalf, and it appears that TDR was not

1   given notice of the TRO motion.

2          Federal Rule of Civil Procedure 65(b) specifically provides that "[t]he court may issue a

3   temporary restraining order without written or oral notice to the adverse party or its attorney only

4   if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and

5   irreparable injury, loss, or damage will result to the movant before the adverse party can be heard

6   in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice

7   and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1).  Local Rule 231(a) also

8   provides that "Except in the most extraordinary of circumstances, no temporary restraining order

9   shall be granted in the absence of actual notice to the affected party and/or counsel, by telephone

10  or other means, or a sufficient showing of efforts made to provide notice. . . . Appropriate notice

11  would inform the affected party and/or counsel of the intention to seek a temporary restraining

12  order, the date and time for hearing to be requested of the Court, and the nature of the relief to be

13  requested."  Plaintiff's TRO motion did not include either (1) an affidavit or a verified complaint

14  showing that immediate and irreparable injury, loss, or damage would result to plaintiff before

15  TDR could be heard in opposition, or (2) a certification in writing that efforts were made to give

16  notice or reasons why notice should not be required.  Based on the record before the court, it

17  appears that none of the defendants, including TDR, have been provided with actual notice of

18  plaintiff's TRO.  For that reason alone, the undersigned recommends that the TRO motion be

19  denied.  *See Hughes v. Green Point Mortgage Funding, Inc.*, 2009 WL 4508513, at *1 (D. Ariz.

20  Dec. 1, 2009) ("In the instant case, Plaintiff's petition has not met the demands of Rule 65(b),

21  since her petition has not been accompanied with an affidavit or a verified complaint that

22  explains why Defendants have not been provided with notice of this matter, thereby justifying the

23  Court to proceed in their absence."); *Bouyer v. Indymac Fed. Bank*, 2009 WL 1765668, at *2

24  (N.D. Cal. June 18, 2009); *Mesde v. Am. Brokers Conduit*, 2009 WL 1636928, at *1 (N.D. Cal.

25  June 5, 2009); *Rosal v. First Fed. Bank of Cal.*, 2009 WL 837570, at *1 (N.D. Cal. Mar. 26,

26  2009); *Castillo v. Chase Bank*, 2009 WL 302757, at *2 (N.D. Cal. Feb. 5, 2009)..

1    Additionally, Local Rule 231(b) provides that "[i]n considering a motion for a temporary

2    restraining order, the Court will consider whether the applicant could have sought relief by

3    motion for preliminary injunction at an earlier date without the necessity for seeking last-minute

4    relief by motion for temporary restraining order.  Should the Court find that the applicant unduly

5    delayed in seeking injunctive relief, the Court may conclude that the delay constitutes laches or

6    contradicts the applicant's allegations of irreparable injury and may deny the motion solely on

7    either ground."  Here, plaintiff specifically acknowledges that her TRO could have been brought

8    at an earlier date. Dckt. No. 4-2 at 1.  Further, TDR purchased the property at a Trustee's Sale on

9    July 22, 2009; a Trustee's Deed Upon Sale was recorded granting the property to TDR on August

10   10, 2009; TDR filed an unlawful detainer complaint in Sacramento County Superior Court on

11   October 20, 2009; and a judgment was entered in the unlawful detainer proceeding and a writ of

12   possession for the property was issued to TDR on November 12, 2009.  Additionally, although

13   plaintiff filed for Chapter 13 bankruptcy on November 13, 2009, staying enforcement of TDR's

14   writ of possession, on December 15, 2009, a hearing was held on TDR's motion for relief from

15   the automatic bankruptcy stay and on December 17, 2009, an order was issued modifying the

16   automatic bankruptcy stay and permitting TDR to take possession of plaintiff's property as of

17   December 31, 2009.  Therefore, there is no explanation for why plaintiff waited until December

18   23, 2009 to file a complaint herein and a request for emergency injunctive relief.  For that reason

19   as well, plaintiff's motion for a TRO should be denied.  *See Hughes*, 2009 WL 4508513, at *1;

20   *Coyotzi v. Countrywide Fin. Corp.*, 2009 WL 2461336, at *2 (E.D. Cal. Aug. 11, 2009)

21   ("Plaintiffs' TRO request appears as a further delay tactic given its belated filing mere days

22   before the unlawful detainer trial."); *Rosal*, 2009 WL 837570, at *2 ("the court finds that

23   plaintiff's delay in requesting a TRO militates against its issuance. Plaintiff was aware of the

24   non-judicial foreclosure sale in June 2008, but did not file suit until March 2009.").

25   Further, setting aside the absence of notice and plaintiff's own delay, she has simply not

26   shown that she is entitled to preliminary injunctive relief.  She has not demonstrated that she is

7

1   likely to succeed on the merits or that the balance of equities tips in her favor notwithstanding the

2   imminent hardship she faces.  Plaintiff's likelihood of success on the merits must initially be

3   measured by the most fundamental prerequisites to suit in federal court; whether she can

4   establish that she has standing to assert the claims on which she predicates the relief sought.

5   Here, in light of the pending bankruptcy proceeding there is little likelihood that plaintiff can

6   demonstrate standing to raise these claims to the property in question.  At the core of plaintiff's

7   claims here is her contention that she still has an ownership interest in the property.  This, of

8   course, will turn on her contention that the foreclosure sale was invalid.  But to the extent that the

9   validity of the sale of the property to TDR can be seriously challenged, plaintiff's resulting

10  ownership interest may well be part of the bankruptcy estate and must be asserted by the trustee

11  for that estate.  "The act of filing a petition for relief under the Bankruptcy Code begins a

12  bankruptcy case and creates an estate in bankruptcy." *Hernandez v. Downey Savings and Loan*

13  *Ass'n*, 2009 WL 704381, at *3 (S.D. Cal. Mar. 17, 2009) (citing 11 U.S.C. § 301(b) ("The

14  commencement of a voluntary case under a chapter of this title constitutes an order for relief

15  under such chapter.") & 11 U.S.C. § 541 (governing the property of a bankruptcy estate)); *see*

16  *also Wherry v. All Cal.Funding*, 2006 WL 2038495, at *2 (N.D. Cal. July 20, 2006) ("Because

17  the property at issue is in the bankruptcy estate, the Bankruptcy Court has exclusive jurisdiction

18  over it.  Accordingly, this Court cannot hear the claims asserted in Plaintiff's TRO Application

19  and Complaint.").  The property of a bankruptcy estate includes "all legal or equitable interests of

20  the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  "It is well

21  settled that prepetition causes of action, including TILA claims, are assets included within the

22  meaning of property of the estate." *Hernandez*, 2009 WL 704381, at *3 (citing *In re Smith*, 640

23  F.2d 888, 890 (7th Cir. 1981) ("there is no question . . . that the [bankruptcy] estate includes

24  causes of action such as [ ] truth-in-lending claims . . . ."); *Rowland v. Novus Fin. Corp.*, 949 F.

25  Supp. 1447, 1453 (D. Haw. 1996); *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001) (assets of

26  plaintiff's bankruptcy estate included prepetition causes of action for unpaid royalties)).  Even

1   claims filed after a bankruptcy proceeding was initiated but prior to bankruptcy discharge are

2   property of the bankruptcy estate, and therefore may only be pursued by the bankruptcy trustee.

3   *Stanley v. Sherwin-Williams Co.*, 156 B.R. 25, 26 (W.D. Va. 1993); *Wherry*, 2006 WL 2038495,

4   at *2; 11 U.S.C. § 554.  Therefore, in order to have standing herein, plaintiff would have to show

5   that (1) her claims fall under the bankruptcy exemption or (2) the bankruptcy trustee has

6   abandoned those claims.  *Rowland*, 949 F. Supp. at 1453.  She has shown neither and the court

7   cannot find that she is likely to succeed on the merits of her claims.[2]

8            Additionally, plaintiff has not shown that the balance of equities tips in her favor.  The

9   court acknowledges that TDR's finally taking possession of the property it purchased in July

10  2009, a house in which plaintiff still lives, undoubtedly works a significant hardship to plaintiff.

11  The loss of possession of one's home is, indeed, a significant injury.  However, the fact that

12  plaintiff waited until December 23, 2009 to seek the TRO at issue even though the property was

13  sold to TDR on July 22, 2009 does not weigh in plaintiff's favor.  Further, TDR has also suffered

14  injury in that it purchased the property in July 2009 but has yet to be able to possess that

15  property.  That harm to TDR will continue if plaintiff's TRO is granted.  TDR purchased the

16  property more than five months ago, pursued an unlawful detainer action in state court, and

17  obtained a state court judgment and writ of possession.  Even after plaintiff filed for bankruptcy

18  on November 13, 2009, TDR successfully obtained an order relieving it from the automatic

19  bankruptcy stay and authorizing it to take possession of plaintiff's property as of December 31,

20  2009.  *See Hernandez*, 2009 WL 704381, at *10; *Alcaraz v. Wachovia Mortgage FSB*, 592 F.

21  Supp. 2d 1296, 1306 (E.D. Cal. 2009) ("This Court agrees with the Wachovia defendants and

22  their assessment that this action 'is a transparent attempt to "buy time"' by stalling off first the

23  foreclosure sale.'  Ms. Alcaraz fails to demonstrate that the balance of hardships weighs in her

24

25          [2]  The court also has other concerns about the merits of plaintiff's claims, including
    potential statute of limitations issues.  However, because plaintiff has not established a likelihood
26  of success on the merits for other stated reasons, those concerns need not be addressed herein.

9

1  favor given her continuing inability to make payments toward her sizeable debt. Postponing

2  Wachovia's lawful relief offers nothing to tip the balance in favor of Ms. Alcaraz.").  Similarly,

3  this last minute lawsuit and application for a TRO has every appearance of an attempt to buy

4  more time by stalling off enforcement of the state court judgment.  Therefore, the court cannot

5  say that the balance of equities weighs in plaintiff's favor.

6      Because plaintiff failed to provide notice of her TRO motion to TDR, failed to timely

7  seek a TRO, and has not established that she is likely to succeed on the merits or that the balance

8  of equities tips in her favor, the undersigned will recommend that the TRO motion be denied.

9      It is HEREBY ORDERED that Plaintiff's application to proceed *in forma pauperis*, Dckt.

10 No. 2, is denied as moot.  It is FURTHER RECOMMENDED that plaintiff's motion for a

11 temporary restraining order, Dckt. No. 4, be denied.

12     These findings and recommendations are submitted to the United States District Judge

13 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14 after being served with these findings and recommendations, any party may file written

15 objections with the court and serve a copy on all parties.  Such a document should be captioned

16 "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

17 within the specified time may waive the right to appeal the District Court's order. *Turner v.*

18 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

19 DATED:  December 29, 2009

20

21                    EDMUND F. BRENNAN
                       UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

10